## Case No. 4,737a.

### FERDON v. The JUSTUS E. EARLE.[1]
### FORSYTH v. FERDON.

District Court, S. D. New York. Nov. 15, 1879.

F. A. Wilcox, for the schooner.
W. H. McDougall, for the sloop.

CHOATE, District Judge. These are cross libels to recover damages occasioned by a collision between the schooner Justus E. Earle and the sloop Catharine Wygant which took place about daybreak of the 11th of August, 1877, in the Hudson river, near the west shore, between Spyten Duyvell and Yonkers. The sloop was bound down the river, laden with brick. The schooner was bound up the river, light. The tide was ebb. The wind nearly west; a good breeze. On the deck of the sloop were the master, who was at the wheel, and directing the movements of his vessel, and a seaman forward as lookout. On the deck of the schooner were the mate, forward, acting as lookout and directing the wheelsman, and at the wheel a seaman. There is no controversy that the schooner's course, until she luffed, just before the collision, was straight up the river, not more than five hundred feet from the west shore. The night was clear, so that vessels' lights could be seen at a considerable distance. Both the men on the schooner saw the sloop, some time before the

[1] [Not previously reported.]

collision, to the northward and eastward of the schooner, coming down the river. The lookout on the schooner saw her green light as she approached, and her course was such that she would have passed on the starboard side of the schooner, at a perfectly safe distance, if she had kept her course. When she had reached a point not more than two or three lengths from the schooner, she ported, and showed her red light to the schooner, thus taking a course directly across the schooner's bow. This manoeuvre was executed at so short a distance from the schooner that it made a collision inevitable. To ease the blow, and to prevent the schooner's striking head on to the sloop at full speed, the mate of the schooner ordered the wheel to be starboarded, and the schooner came up in the wind just as they came together. The sloop kept bearing more and more to the westward till the instant of collision. This is the account given by the lookout on the schooner, and I think it is, in all material respects, confirmed by the two men on the sloop. The master of the sloop did not see the schooner till she was reported by the lookout. The lookout reported a schooner on the lee bow. Both witnesses testify that she was then very near. They put her at two or three lengths off from the sloop. To excuse themselves for not seeing her before, they both testify that they saw no lights on the schooner. But the testimony is entirely satisfactory that the schooner's lights were properly set and brightly burning. The master of the sloop, thus seeing the schooner to leeward, ported his helm, and the next thing he noticed was a shout from the schooner to keep off. He looked again, and saw that the schooner had changed her course and had luffed, and immediately the collision happened. The bowsprit of the sloop struck the starboard side of the schooner near the forerigging. Both vessels were injured. The testimony of those on the sloop is in itself conclusive that they were grossly negligent. Their testimony shows that they did not keep a good lookout. The schooner must have been visible to them at least a mile away, and they only saw her two or three lengths off. On his own showing, the master was grossly negligent after she was reported to him. The vessels were in very close proximity, and, especially as he could not see any lights to assist his judgment as to the course of the other vessel, he should have kept her steadily in view till he was by her. Instead of this he ported his wheel, and took the chances of passing her, and then his attention was called back to her by the shout, which was an instant before the vessels came together. In fact, what those on the sloop say they saw is precisely what the account given by the lookout of the schooner requires that they should have seen, upon the supposition that the lookout of the sloop did not discover the schooner until, by the change of course

which the lookout of the schooner observed, the sloop had headed across the schooner's bow. That change brought the schooner on the lee or port bow of the sloop, where the lookout of the sloop first saw her. The sloop then ported still more, and at the time of the collision was under a hard a-port helm, as her master admits. Almost the only statement of those on board of the sloop, as to her movements, which it is necessary to reject, on this theory of the case, is the statement of the master that until he ported, after the lookout reported the schooner, he had for a considerable time been coming straight down the river, without a change of course. But where those on the sloop are so clearly proved to have been taken by surprise at finding a schooner under their bow, which they ought to have discovered long before, it is little likely that they were, immediately before, paying any particular attention to their course. The porting of the schooner was, under the circumstances, justifiable. It was made necessary by the fault of the sloop, to avert the most serious consequences of the collision, and it seems to have had that effect. Up to the time of the ship's change of course, there was, upon the evidence, no danger of collision. If the courses of the vessels crossed, the point of intersection was so far astern of the schooner that they would have passed in safety. The collision was caused wholly by the fault of the sloop, in not keeping a good lookout, in porting when about passing the schooner on her starboard side, without observing the schooner, and at such a distance that the collision was thereby rendered inevitable. Decree for the claimants in the first suit, with costs, and for the libellant, with costs, in the second suit, and reference to compute damages.